UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 25-CR-00043

RONALD PALLEK,

    Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Julie Stewart, Assistant United States Attorney, and the defendant, Ronald Pallek, individually and by attorney John Campion, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in two counts of a two-count information, which alleges violations of Title 18, United States Code, Sections 1343 and 1957.

3.    The defendant has read and fully understands the charges contained in the information. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## Background Allegations Common to All Counts

THE UNITED STATES ATTORNEY CHARGES THAT:

1. Beginning in or around January 2021, and continuing through at least November 2023, in the State and Eastern District of Wisconsin and elsewhere,

RONALD PALLEK,

with intent to defraud, knowingly devised, participated in, and carried out a scheme to defraud and obtain money by means of materially false and fraudulent pretenses and representations (the "scheme"), which scheme is described more fully below.

2. One aspect of the scheme was to defraud individuals by obtaining funds from them with the false promise that he would invest the funds and return them with interest and significant dividends. Instead, Pallek used substantial amounts of the money he received from these victims to pay personal expenses and repay prior victims in Ponzi-scheme fashion.

3. To further this scheme and make his victims believe he was successfully investing their funds even though he was not, Pallek provided victims with periodic updates about the performance of the "investments," which often included spreadsheets that purported to show positive returns on the investment of the victims' funds. These spreadsheets contained data falsified by Pallek.

2

4. A second aspect of the scheme was to provide his investors "referral bonuses" for encouraging friends to invest with Pallek. Pallek used these referral bonuses to make it appear that his program was successful.

5. Other aspects of the scheme included Pallek allowing investors to "roll-over" their investments into new investments and promising investors that he could cover their loses with his own funds if the trading strategy lost money.

6. For the purpose of executing the scheme, Pallek used and caused the use of interstate wire communications, including through email, text message, and banking transactions.

## COUNT ONE
(Wire Fraud, 18 U.S.C. § 1343)

**THE GRAND JURY FURTHER CHARGES THAT:**

7. All of the allegations set forth in paragraphs 1-6 above are hereby incorporated in support of the following charge as if set forth here in full.

8. On or about November 29, 2022, in the State and Eastern District of Wisconsin and elsewhere,

**RONALD PALLEK,**

for the purpose of executing his scheme, and attempting to do so, to defraud knowingly caused to be transmitted in interstate commerce a wire communication between the Eastern District of Wisconsin and Atlanta, Georgia, when he deposited a $12,000 investment check from L.P. into a bank account at Associated Bank, which Pallek controlled.

All in violation of Title 18, United States Code, Sections 1343 and 1349.

## COUNT TWO
(Engaging in Unlawful Monetary Transactions, 18 U.S.C. § 1957)

THE GRAND JURY FURTHER CHARGES THAT:

9. Paragraphs 1-6 of the Information are realleged and incorporated here, and the following is further alleged.

10. On or about January 6, 2023, in the State and Eastern District of Wisconsin and elsewhere,

### RONALD PALLEK

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of $16,158.73 of unlawfully procured funds, such property having been derived from a specified unlawful activity, that is, wire fraud committed in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957.

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

> Between on or about January 2021 and November 2023, Ronald Pallek sought out individuals from whom he could obtain money for the purported purpose of investment. Pallek told these individuals that he had an infallible strategy through which he could double their money in the stock market, using the "iron condor" trading method. Pallek promised these individuals significant returns on their investment and lulled them

5

into believing that his representation were true by sending them periodic updates implying that their investment was doing well. These updates, which Pallek often sent via text message or email in the form of spreadsheets, were fabricated. Pallek merely falsified purported investment returns knowing that, in fact, he had lost the majority of the money he actually put into the stock market.

Pallek also knew, throughout the time he was selling his "investment program" to unsuspecting individuals, that he was spending a significant portion of the funds his victims were giving him for the purpose of investment on his own personal expenses. In addition, Pallek spent approximately 1/3 of the funds he was given for investment purposes on Ponzi-payments to lull prior investors into believing his representations were true and that the investment program was doing well.

Pallek defrauded over sixty individuals in this fashion, taking in over $2.5 million. Pallek made Ponzi payments of approximately $675,000. Pallek ultimately caused a net loss to investors of at least $1,679,250.00.

To execute this scheme to defraud, Pallek solicited a $12,000 investment from L.P. on November 29, 2022. L.P. provided those funds to Pallek via check, which Pallek deposited into a bank account at Associated Bank, which he controlled. When Pallek solicited this $12,000, he did so knowing that he was making materially false and fraudulent misrepresentations about how the money would be used. When defendant deposited this check into his Associated Bank account, the defendant caused an interstate wire communication to take place.

Furthermore, on or about January 6, 2023, Pallek engaged in a monetary transaction in excess of $10,000 in fraudulently derived funds when he used money he fraudulently obtained from his victims to make a payment of $16,158.73 on his Discover Credit Card.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, the offenses.

**PENALTIES**

7. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum terms of imprisonment and fines:

6

Count One, 20 years, and $250,000; and Count Two, 10 years and $250,000. Each count also carries a mandatory special assessment of $100, and a maximum of three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 30 of this agreement.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of wire fraud as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant knowingly devised or participated in a scheme to defraud;
>
> Second, that the defendant did so with the intent to defraud;
>
> Third, that the scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and
>
> Fourth, that for the purpose of carrying out the scheme or attempting to do so, the defendant used or caused the use of interstate wire communications to take place in the manner charged in the particular count.

The parties understand and agree that in order to sustain the charge of engaging in an unlawful monetary transaction as set forth in Count Two, the government must prove each of the following propositions beyond a reasonable doubt:

<u>First</u>, the defendant engaged or attempted to engage in a monetary transaction; and

<u>Second</u>, that defendant knew the transaction involved criminally derived property; and

<u>Third</u>, the property had a value greater than $10,000; and

<u>Fourth</u>, the property was derived from a specified unlawful activity (wire fraud); and

<u>Fifth</u>, the transaction occurred in the United States.

## **SENTENCING PROVISIONS**

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraph 5. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

8

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

### Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 7 under Sentencing Guidelines Manual § 2B1.1(a)(1).

17. If the sentencing court determines that the defendant does not have any criminal history points, and otherwise meets all of the criteria listed in Sentencing Guidelines Manual § 4C1.1(a), then the government will agree to recommend to the sentencing court that a 2-level decrease is applicable pursuant to § 4C1.1(a) of the Sentencing Guidelines.

### Specific Offense Characteristics

18. The parties agree to recommend to the sentencing court that a 16-level increase for causing a loss in excess of $1,500,000 is applicable under Sentencing Guidelines Manual § 2B1.1(b)(1)(I) is applicable to the offense level for the offense charged in Count One. The parties agree to recommend to the sentencing court that a 2-level increase is applicable because the offense harmed 10 or more victims pursuant to Sentencing Guidelines Manual § 2B1.1(b)(2). The parties agree to recommend that a 2-level increase for abuse of a position of trust is applicable pursuant to Sentencing Guidelines Manual § 2B1.1(b)(10).

### Role in the Offense

19. The government agrees to make no recommendation regarding the defendant's role in the offense; however, the government will advise the sentencing court with regard to any facts or law relevant to this adjustment.

## Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing.

## Sentencing Recommendations

21. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

23. The government agrees to recommend a sentence no greater than 36 months.

## Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing

11

court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon

12

Case 2:25-cr-00043-BHL    Filed 03/10/25    Page 12 of 20    Document 2

request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form. The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Fine

28. The parties agree to recommend that no fine be ordered given the significant restitution that is owed.

### Special Assessment

29. The defendant agrees to pay the special assessment in the amount of $200 prior to or at the time of sentencing.

### Restitution

30. The defendant agrees to pay restitution in the amount of $1,679,250.00 to the investors whose information will be provided in a separate document prior to sentencing. The defendant agrees to pay restitution of at least $41,000 prior to sentencing. The defendant also understands that additional victims may come forward between the time he signs this agreement and the sentencing and that accounted for victims may provide additional documentation of losses beyond the restitution amount noted herein. The defendant understands that the Court will consider any such additional information in determining the ultimate restitution amount. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the

court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

### Forfeiture

31. The defendant agrees that he has an interest in the 2019 Chevrolet Equinox, with VIN 3GNAXLEXXKS564071 (Vehicle), that the Vehicle constitutes the proceeds of the offense to which he is pleading guilty, and agrees to the forfeiture of this property. In the alternative, the defendant may, at the direction of the government, pay the fair market value of the Vehicle as restitution before sentencing. The Defendant also agrees to the immediate entry of a preliminary order of forfeiture and a money judgment of forfeiture in the amount of $1,684,250.00. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement, but that the government will not seek to forfeit the property located at 32374 N. Allegheny Way, Lakemoor, Illinois, 60051 if the defendant makes the payment of $41,000 described in paragraph 30 prior to sentencing.

### **DEFENDANT'S WAIVER OF RIGHTS**

32. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the

14

government and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

33. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant

15

further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, venue, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

36. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255, except insofar as his sentence includes a term of imprisonment of greater than 36 months, in which case this waiver does not apply to his right to appeal his sentence. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statute or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct

16

Case 2:25-cr-00043-BHL    Filed 03/10/25    Page 16 of 20    Document 2

to which the defendant has admitted does not fall within the scope of the statute or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

## Further Civil or Administrative Action

37. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

38. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

39. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

40. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

41. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## Further Action by Internal Revenue Service

42. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the indictment.

43. If requested, the defendant agrees to transmit his original records, or copies thereof, to the Examination Division of the Internal Revenue Service so that the Examination Division of the Internal Revenue Service can complete its civil audit of the defendant. The defendant agrees to provide any additional books and records of his which may be helpful to the Examination Division of the Internal Revenue Service to complete its civil audit of defendant.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

44. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

45. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 3/4/2025

RONALD PALLEK
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 3/5/2025

JOHN CAMPION
Attorney for Defendant

For the United States of America:

Date: 3/5/2025

~~GREGORY J. HAANSTAD~~ Richard G. Frohling
Acting United States Attorney

Date: 3/5/2025

JULIE STEWART
Assistant United States Attorney

20